RILEY et al. *v.* HART et al.

The production of letters showing that fines had been imposed on a mail-contractor by the post-office department for failures to deliver the mail in time, that department having the right to remit the fines on a proper showing, is not sufficient evidence that the fines have been paid, to authorize a judgment for their amount against a sub-contractor through whose fault the fines were incurred.

The right of action on a contract, made by a government mail-contractor with the owners of a steamer, to convey the mail, is not prescribed by one year. C. C. 3499. Such a contract cannot be considered one of affreightment.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge,* J. *C. M. Randall,* for the plaintiffs. *Lockett* and *Goold,* for the appellants. The judgment of the court was pronounced by

KING, J. The plaintiffs sue as owners of the steamboat Douglass, to recover from the defendants compensation for carrying the mail between New Orleans and Bayou Sara. The defendant *Hart* pleaded the prescription of one year, and a failure of the plaintiffs to perform their contract. He also claimed in reconvention, a sum which he alleged he had been compelled to pay for fines imposed by the post-office department, in consequence of the failure of the plaintiffs to deliver the mails punctually. The district judge awarded to the plaintiffs compensation for nine trips of the boat, after deducting the fines incurred in consequence of the neglect of the plaintiffs, and the defendants have appealed. The plaintiffs in their answer ask that the judgment be amended, so as to allow them the entire sum claimed.

It appears from the evidence that the defendant *Hart* was a contractor with the government for the transportation of the mail between New Orleans and Bayou Sara, and employed the steamboat Douglass to carry it weekly, from November, 1843, to the first of March following, at the rate of $86 a trip, going and returning. Early in January, 1844, after nine weekly trips had been performed under this contract, the Douglass was bought out of the trade, by the steamboat Harry of the West, and the plaintiffs employed the Harry of the West to perform the unfinished part of their contract. The mail was actually carried upon the latter boat until the 1st of March, 1844. The defendant *Hart* was no party to this arrangement; but, on the contrary, when he heard that the Harry of the West was to be substituted for the Douglass, expressed his dissatisfaction. He had a strong objection to the Harry of the West, in consequence of a personal hostility which existed between himself and the commander of that boat. He expressed a want of confidence in the commander, and declared his apprehensions that if the execution of the contract were confided to him it would not be punctually performed, and that he would be subjected to fines. After much persuasion however, and the strong assurances of one of the owners of the Harry of the West that he would himself superintend the performance of the contract, and be answerable for its faithful execution, *Hart* finally assented that the mail should be carried on that boat; but upon the condition that it should be carried without charge, and that the officer then in command should be removed if he proved unfaithful; and, on his part, he agreed that he would run no other boat in opposition to the Harry of the West while the contract lasted. As the contractor for the transportation of the mail, he had the right to insist on its being carried on the boat of his own

selection, chosen with reference to its safety and the character of its officers. Both his contract with the government, and his duty to the public, required that he should provide a punctual and secure conveyance for the mail. When the plaintiffs ceased to transport the mail on the boat selected for that purpose, right to treat the contract as at an end; and, when he assented to the substitu- commanded by an officer in whom he had confidence, the defendant Hart had the tion of another boat, with a different commander, to complete the contract, he was at liberty to impose such further terms and conditions as he deemed necessary to ensure the faithful performance of his obligation to the government.

It is true that one of the owners of the Harry of the West states in his testimony, that he was paid by the plaintiffs for carrying the mail under a contract to that effect; but it is not shown that the defendant *Hart* was aware of such a contract between the plaintiffs and the Harry of the West. So far from assenting to such payment, it is shown that this witness was the person who acted in behalf of the Harry of the West in effecting the arrangement with *Hart;* that the permission to carry the mail was obtained at his urgent solicitation; and that "he agreed to carry the mail for nothing, provided Captain *Hart* would put on no opposition boat." The Harry of the West has made no charge against *Hart*, and there is no charge on the books of that boat relating to the transportation of the mail. The evidence renders it more than probable that a part of the consideration of the contract between the Douglas and the Harry of the West, by which the former withdrew from the trade, was, that the latter should carry the mail during the unexpired time for which the Douglass had agreed to carry it; and the witness who states that a compensation was paid for this service, must have considered that, under this contract, the Harry of the West has been remunerated by the owners of the Douglass in the withdrawal of the latter from competition. If this be not the explanation of his testimony, then the witness appears to have received compensation for services which he agreed to perform without reward. But whatever may have been the contract between the owners of the Douglass and the Harry of the West in regard to payment for this service, *Hart* is not shown to have known of it, and is not bound by it. He finally acquiesced, however, in the substitution of the boat selected by the plaintiffs to complete their undertaking, and upon terms advantageous to himself, and cannot complain that the contract has been violated, or avoid paying the plaintiffs for the services actually rendered by them.

We think that the judge erred in charging the plaintiffs with the fines alleged to have been imposed, for failures to deliver the mail seasonably. Letters have been produced showing that the fines were imposed by the post-office department at Washington, and this is the only evidence relied on to show that they have been paid. It is known that the department is clothed with the power both to impose fines upon mail-contractors for delinquencies, and to remit them upon a proper showing. Under these circumstances, the bare production of a letter notifying a contractor that he has been fined for a failure to deliver a mail, cannot be deemed sufficient evidence that the fine has been paid. In this respect the judgment must be amended, reserving to the defendants the right to claim the amount of these fines, upon making proof of their payment.

The prescription of one year, pleaded by the defendant *Hart*, does not, in our opinion, apply to a contract like the present, which can, in no sense, be con-

RILEY
v.
HART.

sidered a contract of affreightment. Civil Code, art. 3499. The contract was one for carrying the mail, and its character is not changed by the fact that the transportation was by water, instead of being by land.

## SAME CASE—ON A RE-HEARING.

Where the answer of an appellee praying for an amendment of the judgment is not filed until the day fixed for the argument of the case, no amendment can be made. C. P. 890.

ON a re-hearing in this case, the opinion of the court was pronounced by KING, J. Our attention has been called to the fact that, the answer of the appellee praying for an amendment of the judgment appealed from, was not filed until the day fixed for the argument. The delay within which he is permitted to ask this change had then expired. C. P. 890. Instead of the decree heretofore rendered, one must be entered merely affirming the judgment appealed from.                                              *Judgment affirmed.*